# Brunner's Appeal.

*Judgment of married woman, void except for purchase-money.—Revival of judgment executed by her before marriage, validity of.*

1. A judgment given by a married woman for a debt contracted for the improvement of her real estate, is void.
2. But a wife may agree to revive a judgment which was entered on a bond executed by her before marriage.
3. An auditor may disregard a void judgment.

APPEAL from the Orphans' Court of *Berks county*.

This was an appeal by John Brunner from the decree of the Orphans' Court dismissing exceptions filed by him against the confirmation of the report of the auditor on the account of James E. Wells, administrator of the estate of Magdalena Hoffman, deceased, who died intestate.

The case was this :—Magdalena Hoffman (formerly Magdalena Byler), who, at the time of her death, was the wife of William Hoffman, died in 1862, seised of a tract of land in Berks county, which afterwards, on application of her administrator, James E. Wells, was sold under an order of the Orphans' Court, for the payment of debts. The distribution of the proceeds of said sale was referred to an auditor appointed by the court. Lien-credit-

ors of the deceased presented their claims before the auditor as follows:—

1. Judgment.—Owen B. Good *v.* Magdalena Byler, No. 10, November Term 1855, entered 7th November 1855, on a judgment-bond dated April 6th 1855, conditioned for the payment of $600 on April 1st 1856, with interest. Revived by agreement of Magdalena Hoffman and William Hoffman, filed February 9th 1860.

2. Judgment.—John Brunner *v.* Magdalena Hoffman, No. 326, November Term 1858, entered December 28th 1858, on a judgment-note dated December 6th 1858, for $161.72 with interest.

3. Mortgage.—William Hoffman and Magdalena his wife, to Elijah Bull and Charles Rettew, dated 28th February 1859, recorded March 1st 1859, to secure payment of bond for $119.71 with interest.

4. Mortgage.—William Hoffman and Magdalena L. his wife, to Robert A. Gilmer, dated 17th July 1861, to secure payment of bond for $102.73, with interest.

The validity of John Brunner's judgment was contested, on the ground that it was entered on a judgment-note given by a *feme covert*.

The validity of the lien of Owen B. Good was also objected to on the ground that the original judgment given by Magdalena Byler, while a single woman, was not properly revived; the revival having been, by the written consent of herself and husband, in an amicable *scire facias*, after her marriage.

The judgment in favour of Brunner was founded on a claim against Magdalena Hoffman, deceased, for lime and rails furnished for, and used on land of said Magdalena while she was single. They were sold to her at one year's credit in 1855, and after she was married, to wit, in 1855, she gave John Brunner a note for the claim, payable in three years, at five per cent. interest; after this note became due (it being unpaid), the judgment-bond in dispute was given for the amount of the note, and interest. The land to which the rails and lime went, was the same land which was sold as the property of Magdalena Hoffman, the proceeds of which were in court for distribution.

The judgment of Owen Livingood was had under the following circumstances: "Magdalena Hoffman, then Magdalena Byler, bought the land above referred to (and of which she died seised) in the winter of 1854—title was made in the spring of 1855—to pay for it she borrowed $600 from James E. Wells and Owen B. Good. The whole of the principal and $107 interest was due April 1st 1863. The judgment-bond held by Owen Good was given to indemnify him for becoming bail to James E. Wells for this amount."

The auditor rejected the claim of John Brunner allowed

[Brunner's Appeal.]

that of Owen Livingood, and made distribution accordingly. To this report exceptions were filed, all of which, so far as the claim of Brunner was concerned, were dismissed, which was the error assigned for the appellant.

*John Banks*, for appellant.—1. Although a married woman cannot convey her land without her husband joins with her in the deed, nor mortgage it for general purposes, nor execute a bond so as to make herself personally liable, she can buy land and give a bond or mortgage, or both, to secure the purchase-money : Patterson *v.* Robinson, 1 Casey 82 ; Romberger *v.* Ingraham, 2 Wright 147 ; Glass *v.* Warwick, 4 Id. 145.

In strict law, a married woman alone cannot make such contracts ; she may not be personally bound by them generally, as by a contract at common law. The property alone is bound, and the payment is enforced out of it by way of equity, so as to prevent injustice.

2. In Hughes *v.* Jones and Wife, 8 Casey 433, it is said, " possibly debts contracted for the improvement of her separate estate by a married woman, when the money is so applied, is binding."

In Murray *v.* Keyes, 11 Casey 391, the following is found : " it will doubtless be objected to our reading," or " in the proviso to the 8th section, as if it had been written," and " that it excludes the case where a married woman contracts debts not for necessaries, but to improve her separate estate, remove liens, or for other purposes, strictly personal to herself. This consequence must be accepted, and is right for two reasons : 1st, That such debts are within the proviso to the 6th section, and therefore did not need the protection of the proviso to the 8th section."

In Wightman's Appeal, 5 Casey 282–3, it was held that a bond and mortgage given by a married woman for materials purchased, and labour done upon and for improvements made on her separate estate, were valid and binding contracts. This case was in the distribution of the proceeds of sheriff's sale. The judgment and mortgage were presented by McFarland & Co., the creditors, to the auditor and the amount claimed out of the proceeds of sale. This was objected to by other lien-creditors. They were, however, held to be valid and binding liens on the land, and the amount was decreed by the court to them on their bond and mortgage.

I look upon this as meeting the precise and direct point in issue in the case now before the court. It has not been overruled by this court in any subsequent case, nor have its principles been shaken by anything that has fallen from this court.

The court below appear to have been governed by the case of

Keiper and Helfricker, 6 Wright 329. This case, properly understood, does not affect the present case, nor impair the authority of Wightman's Appeal. It was not a bond given for purchase-money of land. It was a loan of money to be applied in a particular way, and was therefore held not to be protected by the cases of Patterson *v.* Robinson and Romberger *v.* Ingraham.

Nor does the case of Steinman *v.* Ewing, 7 Wright 66, affect this one. That was also a case of money borrowed, to be applied in part payment of land. It was not for purchase-money. For this reason it was held not to be binding.

It does not impair the authority of Wightman's Appeal, but, on the contrary, would appear to affirm it, as the case of improvement of her separate estate by a married woman seems to be taken for granted in the opinion of the court.

3. The auditor could not disregard the judgment or declare it void. It stood upon the records of the court as a judgment, and the auditor was bound to treat it as such: Dyott's Estate, 2 W. & S. 557. Application might have been made to the court to open it or strike it off the docket, by her or her representatives, but not by a subsequent mortgagee who took the mortgage with full notice of the judgment standing properly entered upon the docket.

4. If the Brunner judgment was void, then it would follow as of course that the Good judgment was also void, and was not entitled to a preference over other general creditors. It was a judgment-bond given by Magdalena Byler, while single. She was married in the spring of 1855. Judgment was entered upon it on the 7th of November 1855, against Magdalena Byler. It stood in that way until the 9th of February 1860, when there was an attempt to revive it by an agreement which was filed. Could a married woman lawfully do this? If she could not by bond give a warrant to confess judgment, could she by warrant authorize the confession of a judgment of revival? The one is by contract as well as the other. The end to be obtained is judgment in each case. The same power is requisite in each case. If present in one, it is present in each. If void in one, it is void in both. That the husband joined does not give validity to the judgment as to the wife: Caldwell *v.* Walters, 6 Harris 88; Dorrance *v.* Scott, 3 Whart. 309.

It was a debt contracted before marriage; so was Brunner's. It was not for purchase-money, according to the cases already cited. Therefore, if Brunner's judgment was not a lien, the judgment of Good was not a lien, and they should both have been thrown in amongst the general creditors for a *pro rata* distributive share.

[Brunner's Appeal.]

*J. S. Livengood* and *J. S. Richards*, for appellee.—1. That a married woman cannot enter into a contract, such as that with Brunner, is clear from numerous decided cases: Glyde *v.* Keister *et ux.*, 8 Casey 87; Dorrance *v.* Scott and Wife, 3 Wh. 309; Caldwell *v.* Walters, 6 Harris 79; Petit *v.* Fretz's Ex'rs., 9 Casey 118; Bear's Administrators *v.* Bear, 9 Id. 525; Richards *v.* McClelland, 5 Id. 385; Keiper *v.* Helfricker, 6 Wright 325; Steinman *v.* Ewing, 7 Id. 63.

In Wightman's Appeal, 5 Casey 282, the contest was between parties who alleged that the fund in court arose from the sale of the husband's interest in the land, and others who alleged that the land sold was the wife's.

The case of Heugh *v.* Jones *et ux.*, 8 Casey 432, in which it is said that the liability of the property of any married woman for debts contracted by herself, may possibly include debts contracted for the improvement of her separate estate, where the money is so applied, is also cited. Grant that this liability exists, would a judgment-bond given by her for such a debt, be valid? She is liable for debts contracted before marriage, or for necessaries for the support and maintenance of her family. Yet it is said, in Keiper *v.* Helfricker, 6 Wright 325, that a judgment-bond given after coverture for debts thus contracted, is absolutely void. Steinman *v.* Ewing, 7 Wright 63, reaffirms the doctrine so often held by this court that "the bond of a married woman is absolutely void, and so also is any judgment entered upon it, whether by warrant of attorney or otherwise."

The Supreme Court have shown no disposition to extend the liability of married women beyond the cases of Patterson *v.* Robinson, 1 Casey 82; Romberger *v.* Ingraham, 2 Wright 147; and Glass *v.* Warwick, 4 Id. 145. And in cases like these the Supreme Court, in Glass *v.* Warwick, say: "In strict law a married woman has no power to make any such contracts, except when joined with her husband, and it is only by way of equity that they are enforced, and so as to prevent great injustice."

2. The original judgment of Owen B. Good against Magdalena Byler, then a *feme sole*, was dated April 6th 1855, and entered November 7th 1855. It was for the money which paid for the land which the administrator sold, and the proceeds of which sale were for distribution. The defendant afterwards married William Hoffman, and on the 3d day of February 1860, she and her husband agreed to a revival of the judgment in order to continue the lien for another period of five years. This was done by an amicable action of *scire facias*.

The Act of 26th March 1827, § 1, provides expressly that judgment may be revived by agreement of the parties, filed in writing and entered on the proper docket. Magdalena Hoffman

[Brunner's Appeal.]

was a party to the judgment, and agreed to its revival, which was filed in writing and entered on the proper docket. Had she no right to do this, because, although she was a party to the judgment, she had, since the judgment was given, become a *feme covert?* The plaintiff wished the judgment revived; she had no defence. Was she compelled to suffer the costs of an action at law?

It is true, that the confession of a judgment by a wife is ordinarily void, but this is not that case. That is the creation of a new contract liability; our case is merely the recognition of a liability which the law has already imposed. The one is the execution of a contract which the policy of the law forbids— the other is the execution of a judgment by which the law has expressly bound her.

A married woman can execute a mortgage, and can stipulate for a waiver of the year after the money is due, within which the statute has forbidden a *scire facias* to issue: Glass *v.* Warwick, 4 Wright 140. As ancillary to the principal contract, who would doubt her ability to waive the writ, and confess judgment in an amicable action?

A *scire facias* to revive a judgment is a judicial, and not an original writ, and is merely a continuation of the original action: 2 Tr. & H. 303. Could not the wife waive inquisition, and authorize the sale of her lands on a *fi. fa.?* This was done by Mrs. Rupp, in Wightman's Appeal, 5 Casey 280. Could not she and her husband have paid this judgment, or must she await execution, and suffer the sale of her property when it should suit her creditor? May she not rather gain time and avoid costs, by agreeing to a revival of the lien in the manner pointed out by the Act of Assembly?

3. But if the revival be irregular, can a third party inquire into it? As a creditor to protect himself against fraud, he may resist the appropriation of money to a void judgment. But irregularity makes a judgment voidable only, and if the principals acquiesce, third persons are bound.

The question in all these cases is, was the original judgment valid? If it was not, a revival by action would not help the plaintiff. If it was, the revival by confession was only evidence of the acquiescence of the party in the liability which the law had established.

When a plaintiff or defendant dies, his executors or administrators may substitute themselves by consent, and this is the common practice: Fritz's Ex'rs. *v.* Evans, 13 S. & R. 16; Gemmil *v.* Butler, 4 Barr 232. In real actions, guardians are substituted by consent, when necessary. An infant is bound by partition, unless facts are shown to prove its irregularity. An agreement by a *feme covert*, making partition of her real estate,

is binding without a separate examination and acknowledgment: Rhoads's Estate, 3 Rawle 420; Burke v. Leesee of Young, 2 S. & R. 338.

The legal liability once settled, the mode of its enforcement may be agreed to. The amicable *sci. fa.* was a mode of enforcing the judgment. It was therefore a proceeding in court under the control and in the eye of the court, and the entry of the judgment was the act of the court.

The opinion of the court was delivered, March 25th 1864, by

STRONG, J.—At common law a judgment confessed by a married woman is absolutely void, no matter how meritorious may be its consideration. To this a single exception has been admitted in this state. A judgment-bond given by a married woman for the purchase-money of land conveyed to her, has been held a valid security to enable a resort to the land itself. The exception was first declared in Patterson v. Robinson, 1 Casey 81, and it was reasserted in Romberger v. Ingraham, 2 Wright 147. The ground upon which it was rested seems to have been that, to avoid injustice, a conveyance to a feme covert and her confession of judgment for the purchase-money are, taken together, a substantial conveyance upon condition of payment of the price, and therefore she will not be allowed to retain both the price and the land.

It was said indeed in Patterson v. Robinson, that "under the Act of 1848, her power to purchase gives her a right to contract for the payment of the consideration-money so far as to charge the property with such encumbrances as may be agreed upon to secure its payment." Notwithstanding this remark, however, it is obvious that the validity of a married woman's judgment-bond in this exceptional case is not dependent upon anything contained in the Act of 1848. That act gave her no power to purchase land which she had not before, and consequently made no provision for securing the purchase-money. It matters not whence comes her power to bind land, which she has purchased by confessing a judgment. It is enough that it is settled she has power to confess a valid judgment in this one case. It is equally well settled that she can bind herself or her property by a judgment-bond in no other case. The Act of 1848 does not confer any such power upon her. It was a great innovation upon the common law, but its purpose was to secure a wife in the use and enjoyment of her property, not to enable her to make contracts she could not have made before. There is nothing in it which expressly removes any of her common law disability to contract, unless it be in the provision that her contract for articles necessary for the support of the family of the husband and wife may be secondarily enforced against her separate property. And while there is no other expressed enabling clause in the act, there is no apparent necessary

implication of enlarged ability to enter into contracts. The argument of the appellant seeks to show that an implication of such ability is necessary in some cases, of which his is one. The judgment-bond of Mrs. Hoffman to him (held void by the auditor, and in the court below) was given to secure the price of lime and rails furnished by him to her, and which had been used upon her land. It is insisted that if a feme covert may own, use, and enjoy her property, as her own separate property, she must be able to contract debts for the improvement of it, and hence it is inferred she may confess a judgment to secure them. Whether she can contract such debts since the Act of 1848 has not been decided, though it is true there has been an occasional intimation that possibly she can. Such a power is certainly not expressly given, and it is not manifest how it is necessary to a wife's ownership, use, and enjoyment of her personal or real estate, not as a feme sole, but as the holder of separate property. Surely it is not any more so than is an uncontrolled power to sell. Yet it has been held that she cannot convey without joinder of her husband in the deed. Nor is it any more necessary for her use and enjoyment than is the power to borrow money to make improvements, which she cannot do: Bear's Admr. *v.* Bear, 9 Casey 525. But were it the law that a married woman can bind herself by a contract for the improvement of her lands, it by no means follows that she can give a judgment-bond for such a purpose. In Keiper *v.* Helfricker, 6 Wright 329, it was said that a bond with a warrant of attorney to confess judgment given by a married woman, even though for debts contracted before marriage, or for necessaries, would not be good. In all judicial proceedings to enforce the liabilities of a married woman, her husband is a necessary party, though execution upon a judgment obtained against both may be levied out of her separate estate. The joinder of the husband is essential to her protection. And in the 8th section of the Act of 1848, the mode of recovery of debts contracted by her for articles necessary for the support of the family of the husband and wife, is declared to be by suit against both.

The appellant relies upon Wightman's Appeal, 5 Casey 282, as an authority for his position that the judgment-bond of a married woman given for a debt contracted for the improvement of her real estate is good. An examination of the case, however, will show that it does not rule any such principle. That was an appeal from the distribution of the proceeds of a sheriff's sale of lands as the property of a wife. The appellant was the holder of whatever title had been in the husband, which had been sold at a previous sheriff's sale. Of course he had no interest in the proceeds of a second sale as the property of the wife, and could not call in question any distribution the court made of them. There was no party therefore to assail the judgment, or mortgage which

[Brunner's Appeal.]

ever it was, given by the wife, nor was there any attempt to assail it. This court was not called upon to pronounce upon its validity. The only question passed upon was whether the fund for distribution was the property of the husband or of the wife.

We hold then that the judgment given by Magdalena Hoffman to the appellant was void, and no lien upon the land sold. Had the land been sold upon it, no title would have passed. Caldwell v. Waters, 6 Harris 79. Being absolutely void, the auditor's duty was to disregard it. Had it been only voidable, application should have been made to the court to rid the record of it, and that might have been done either by the obligor in the bond or a mortgagee claiming under her. But the rule enunciated in Dyott's Estate, 2 W. & S. 557, is inapplicable to a judgment void on its face.

The exception to the validity of the revival of the judgment of Owen Good, we think cannot be sustained. The original judgment, though entered after the marriage of Mrs. Hoffman, was in virtue of a bond with warrant of attorney to confess judgment given before her marriage. Before the lien had expired, it was revived by agreement signed by Mrs. Hoffman and her husband, and by the attorney of the plaintiff. The agreement stipulated for the entry of an amicable revival of judgment. It is said this agreement did not authorize a judgment of revival because it was the agreement of a married woman. But it was very unlike an agreement to confess an original judgment. It was not for the creation of any new liability. The action was already in court.

It is true the judgment should have been entered at first against both the husband and wife, but the entry in the manner in which it was made was only an irregularity. The scire facias was but a continuance of the original action, in a certain sense, in the nature of execution, and the revival of the judgment was a matter to which the wife was in law bound to submit. We think therefore, while she could not confess an original judgment, she could acknowledge a revival of one already in existence. She must be intended as authorized to do so by the Act of March 26th 1827, sec. 1, 9 Sm. 303, which provided for revivals by agreement of the parties to judgment. This enactment was for the benefit of debtors, to relieve them from costs, and a married woman ought not to be deprived of the privilege given.

The decree of the Common Pleas is affirmed with costs.

AGNEW, J, was absent at Nisi Prius, when this case was argued.